UNITED STATES DISTRICT COURT
DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Hon. Christopher R. Cooper |
| Plaintiff, | |
| | CRIMINAL NO. 17-cr-215 |
| vs. | |
| AIMEE OCCHETTI, | |
| Defendant. | |

## AGREEMENT FOR PRETRIAL DIVERSION

The United States of America, by and through its attorneys, and Defendant AIMEE OCCHETTI agree to a disposition of this matter in accordance with the following terms and conditions in this Agreement for Pretrial Diversion ("the Agreement"):

1. Defendant AIMEE OCCHETTI has been charged in the District of the District of Columbia with one count of Health Care Fraud Conspiracy in violation of 18 U.S.C. § 1349 and one count of Health Care Fraud in violation of 18 U.S.C. § 1347, as alleged in Counts Four and Five of the Indictment.

2. Upon Defendant OCCHETTI's affirming that the attached Statement of Facts is accurate, and in the interests of justice, the Government shall move to defer prosecution of Defendant OCCHETTI for the offenses charged in the Indictment for the period of nine (9) months from this date, provided that Defendant OCCHETTI abides by the following conditions and the requirements of this Agreement set out below:

    a. Defendant OCCHETTI must not violate any law or be arrested on probable cause and shall immediately contact her pretrial diversion supervisor if arrested and/or questioned by any law enforcement officer.

    b. Defendant OCCHETTI must not violate any Court Order.

1

      c. Defendant OCCHETTI must abide by all release conditions set by the D.C. Pretrial Services Agency and the Court.

      d. Defendant OCCHETTI must perform 120 hours of verified community service to be completed within the nine-month deferment period.

      e. Defendant OCCHETTI agrees to receive service of a subpoena for any trial of her co-defendant and to make herself available at the time and place specified therein. Defendant OCCHETTI further agrees to waive her rights under the Fifth Amendment should she be called to testify in any such trial, provided that the subject of the questioning relates to the matters alleged in Counts Four and Five of the Indictment, the terms of this Agreement, or the circumstances of its execution.

3. Should Defendant OCCHETTI violate the conditions of this Agreement, the Government may revoke or modify any conditions of this pretrial diversion program or change the period of supervision, which shall in no case exceed eighteen (18) months. If the Government determines that Defendant OCCHETTI has violated any condition of this Agreement, the Government may reinitiate prosecution for the offenses in the Indictment. The determination of whether Defendant OCCHETTI has violated any of the conditions in this Agreement rests exclusively with the Government.

4. Defendant OCCHETTI agrees to a nine-month deferral of the trial of the charges against her in the Indictment and consents to waive her right to constitutional, as determined by the application case law, and statutory speedy trial pursuant to Title 18, United States Code, Sections 3161–3741. Defendant OCCHETTI further agrees to waive any defense to such prosecution on the ground that such delay operated to deny her rights under Rule 48(b) of the Federal Rules of Criminal Procedure and the Sixth Amendment to the Constitution of the United States to a speedy trial, or to bar the prosecution by reason of the running of the statute of limitations for a period of nine (9) months.

5. The parties specifically agree that this Agreement and any other document filed with

the Government as a result of Defendant OCCHETTI's participation in the Pretrial Diversion Program may be publicly disclosed and released to anyone by the Government. The parties further agree that the admissions made by Defendant OCCHETTI in this Agreement can and will be used against Defendant OCCHETTI in connection with any prosecution of the above-described offenses for impeachment purposes.

6. If the defendant abides by the conditions set forth in this Agreement for a period of nine (9) months, beginning with the date of the signing of this Agreement by Defendant OCCHETTI and the Government, the Government agrees to dismiss with prejudice Counts Four and Five in the Indictment against Defendant OCCHETTI.

Date: July 13, 2021

_____
Vincent J. Falvo
Attorney for the Government

## DEFENDANT'S ACCEPTANCE

I have read, or have had read to me, this Agreement for Pretrial Diversion and have discussed it with my attorney. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will. No threats have been made to me. I am not under the influence of anything that could interfere with my ability to understand this Agreement fully. I understand that the Sixth Amendment to the United States Constitution gives me the right to a speedy trial. I request a delay in the trial and agree to waive my speedy trial rights in this case for the duration of this Agreement. No promises, agreements, understandings, or conditions have been made except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.

Date: July 13, 2021

_[signature]_
Defendant Aimee Occhetti

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Agreement for Pretrial Diversion, reviewed them with my client, and discussed the provisions of the Agreement with my client fully. These pages accurately and completely set forth the entire Agreement.

Date: July 13, 2021

_[signature]_
Nikki Lotze, Esq.
Attorney for Defendant OCCHETTI

4

## Statement of Facts

Beginning in the summer of 2014, Roderick Bennett sought to assist Aimee Occhetti in obtaining employment as an associate general counsel at LIUNA. Bennett misrepresented to Occhetti that the LIUNA legal department offered her a job when in fact they had not. The LIUNA legal department, in fact, never offered Occhetti employment with LIUNA. Beginning at least as early as July 2014, Bennett and Occhetti, agreed to enroll Occhetti in the LIUNA Health Care Plan when both knew Occhetti had not started working at LIUNA and thus not eligible to participate in LIUNA Healthcare Plan.

On October 3, 2014, both Bennett and Occhetti knew she was not an employee of LIUNA and thus not eligible to participate in LIUNA Healthcare Plan. Shortly thereafter, Occhetti spoke to a representative of the benefits department at LIUNA at Bennett's direction and provided her personal information in order to be enrolled in the LIUNA Health Care Plan. As a result of those actions, the LIUNA Healthcare Plan issued Occhetti an Aetna membership card to which she was not entitled under the terms of the LIUNA Healthcare Plan or its agreement with Aetna.

On October 14, 2014, Occhetti presented the Aetna membership card to a medical provider in order to receive medical care. As a result, Occhetti received insurance coverage from Aetna for medical services received on October 14, 2014, when she was not eligible to receive that coverage. From October 2014 through August 2015, Occhetti similarly presented the Aetna membership card to medical providers to receive insurance coverage knowing that she was not an employee of LIUNA and thus not eligible to participate in LIUNA Healthcare Plan.